## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CHARLENE UHL, Individually, as Heir at Law and as Representative of the Estate of HALEY KRUEGER, Deceased** | § § § § | **CIVIL ACTION NO. <u>5:18-cv-00881</u>** |
| **vs.** | § § § | |
| **THE UNITED STATES OF AMERICA** | § | |

---

### COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, Charlene Uhl, Individually, as Heir at Law and as Representative of the Estate of Haley Krueger, Deceased, ("Plaintiffs"), and file this Complaint for Damages against The United States of America ("Defendant USA") for negligence of the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2674, and for cause of action would show this Honorable Court the following:

### I. SUMMARY OF THE CASE

1.      This is an action against Defendant, The United States of America, under the Federal Torts Claims Act, (28 U.S.C. §2671, et seq.) and 28 U.S.C. §1346 (b)(1) to recover monetary damages for negligence of Defendant USA and the wrongful death of Haley Krueger, and other appropriate relief as a result of the negligence and willful wanton acts of The United States of America by one or more employees of the United States government while acting within the course and scope of their office or employment.

## II.  PARTIES

2.      **Plaintiff** Charlene Uhl is a resident of Texas.

3.      Plaintiff Charlene Uhl is the surviving mother of Decedent Haley Krueger.

4.      Plaintiff is a proper party under Texas law to bring a claim for the wrongful death of her daughter, Haley Krueger.

5.      **Defendant** is The United States of America.

6.      Defendant, The United States of America may be served with process by delivering a copy of the Summons and Complaint via certified mail to each of the following:

> a.      John F. Bash, Esq., United States Attorney for the Western District of Texas, 601 NW Loop 410, Suite 600, San Antonio, Texas 78216, Attn: Civil Process Clerk;
>
> b.      Jeff Sessions, Esq., Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001, Attn: Civil Process Clerk;
>
> c.      James N. Mathis, Department of Defense, 1400 Defense Pentagon, Washington, DC 20301-1400; and,
>
> d.      Dr. Heather Wilson, Ph.D., Secretary of the United States Air Force, 1670 Air Force Pentagon, Washington, DC 20330-1670.

## III.  JURISDICTION AND VENUE

7.      This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. & § 1346, et seq. for money damages for death that was caused by the negligent or wrongful acts or omissions of one or more employees of the United States government while acting within the course and scope of their office or employment under circumstances where Defendant USA, if a private person, would be liable to Plaintiffs for the wrongful death and damages in accordance with Texas law.

8.      This action arises out of an incident that occurred in Wilson County, Texas, where the

Plaintiffs reside.  Wilson County is in the Western District of Texas, San Antonio Division.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1402(b) because the incident occurred in Wilson County, Texas.

## IV.  AMOUNT IN CONTROVERSY

10.     Plaintiffs seek all elements of actual damages recoverable by law.  Plaintiffs claimed $15,000,000.00 in damages in the administrative claim and seek damages in such amounts here.

## V.  STATEMENT OF CLAIM

11.     Pursuant to 28 U.S.C. § 2675(a), Plaintiffs timely presented their claims to Defendant, The United States of America, by submitting Forms SF-95 to the Secretary of the Air Force, Dr. Heather Wilson, via USPS Priority Mail Express to the U.S. Air Force Claims & Tort Litigation Division, 1500 West Perimeter Road #1700, Joint Base Andrews, Maryland 20762, on January 31, 2018.  Notification of delivery on February 5th, 2018 was later received.  (See Forms SF-95, cover letters, and return receipts attached as Exhibit A.).

12.     Receipt of the claim (Air Force Claim Nos. 18-7524) by the Department of the Air Force on February 9, 2018 was acknowledged by attorney Bradford S. Hunt, Chief, General Torts Branch, Air Force Claims and Tort Litigation Division.  (See Hunt correspondence acknowledge receipt of claims attached as Exhibit B.)

13.     As of August 1, 2018, more than six months have elapsed since the claim was presented to Defendant USA. Defendant USA has not made a final disposition of Plaintiffs' claims. Accordingly, the claims of the Plaintiffs are deemed denied pursuant to 28 U.S.C. § 2675(a).

14.     Plaintiffs have exhausted their administrative remedies under the Federal Tort Claims Act and have fully complied with the statutory prerequisites for bringing this tort action against the Defendant USA.

## VI.  BACKGROUND FACTS

15.     On Sunday, November 5, 2017, Haley Krueger and twenty-five (25) other people were murdered and twenty (20) others wounded in a mass shooting at the First Baptist Church of Sutherland Springs in Sutherland Springs, Texas.  Haley Krueger was murdered in the course of attending Sunday worship services.

16.     Pleading further, but not by way of limitation, and adopting paragraphs 1-15 above as though fully set forth verbatim, The United States Congress enacted legislation preventing the purchase of firearms by individuals with a known risk of violent propensities and/or felony convictions and Congress further required that information pertaining to those individuals be placed into a database where an instant background check could be performed by retailers of firearms for the safety of the citizens of the United States. The Brady Handgun Violence Prevention Act required the Attorney General of the Unites States to establish an instant criminal background check system that the sellers of firearms must use to determine if the sale of the firearm violates 18 U.S.C. § 922. The Domestic Violence Offender Gun Ban made it unlawful to sell firearms to anyone convicted of a misdemeanor crime of domestic violence.  Additionally, 34 U.S.C. §40901 requires federal agencies to report information pertaining to individuals who should not be able to purchase a gun shall provide such pertinent information to the Attorney General for the national instant criminal background check system.  The Department of Defense created a database that requires the branches of the military report and record incidents of domestic violence and criminal activities of its service members. According to its own policy, the Department of Defense has a non-delegable duty to monitor and ensure compliance to report incidents of domestic violence and criminal activities and convictions.

17.     Devin P. Kelley (also herein referred to as "the shooter" and/or "Airman Kelley") had a

long history of behavioral issues and generally poor performance during his tenure with the United States Air Force. He received at least four (4) letters of counseling and five (5) letters of reprimand between July 2011 and March 2012. Airman Kelley's conduct included:

    a.)    failure to obey a direct order;

    b.)    creating a hostile work environment;

    c.)    making false statements; and,

    d.)    insubordination of a superior officer.

18.    In at least seven (7) of these letters, Airman Kelley was warned that his conduct constituted a criminal act. The US Air Force also told Airman Kelley that he had proven he could not be depended upon in at least three (3) of these letters. Two (2) of these letters note that Airman Kelley could not always be trusted and had demonstrated a flagrant disregard for the core values of the United States Air Force. Each letter contains a warning to Airman Kelley, stating that future misconduct would lead to more severe punishment.

19.    During Airman Kelley's time at Holloman Air Force Base, he was caught trying to sneak firearms on to the premises. Military officers and investigators were advised that Kelley was making preparations as a precursor to attempting to carry out death threats Kelley had made against his commanding officers.

20.    As a result of Airman Kelley's work conduct, threats made by Kelley, and the domestic abuse of his wife and infant child, the US Air Force ordered Kelley confined to the Peak Behavioral Health Hospital ("Peak") in Santa Teresa, New Mexico for one year.

21.    While receiving inpatient care at Peak, Airman Kelley made several threats that, were he to be picked up Air Force Security Forces, he would go for their guns. While at Peak, Airman Kelley tried to purchase firearms and have them mailed to San Antonio, Texas and researched

body armor generally and specifically how to obtain body armor. This was done in an attempt to carry out the previously made threats against superior officers in his chain of command. This attempt to purchase weapons transpired after the US Air Force, its agents or contractors had confiscated the weapons he'd originally obtained and unlawfully possessed on Holloman Air Force Base.

Kelley escaped from the Peak Behavioral Health Hospital on June 7, 2012 by jumping a fence and immediately made arrangements to purchase a firearm. However, he was caught by Texas law enforcement officers on June 8, 2012, the next day.

22.     Kelley plead guilty to assaulting his wife, Tessa Loge, striking her, choking her, pulling her hair, and kicking her. He also plead guilty to assaulting his infant stepson after striking the child hard enough to "produce death or grievous bodily harm". The other charges brought against him were withdrawn and dismissed with prejudice as part of Kelley's plea deal. The US Air Force sentenced Kelley to twelve (12) months imprisonment, a bad-conduct discharge, and reduction in rank to Airman, Basic (E-1). The US Air Force placed Airman Kelley on lockdown during both his pre- and post-trial confinement as he was determined to be a suicide risk. The US Air Force discharged Devan Patrick Kelley on April 10, 2014.

23.     The Department of the Air Force, the Department of Defense and the United States of America failed to follow their own rules. The United States negligently, willfully and with wanton disregard to the safety of the citizens of the United States of America did not report Devin Kelley's criminal conduct, criminal convictions, bad conduct discharge and mental health issues into the databases as required by law.

24.     The failures of the United States Air Force ("US Air Force"), the Department of Defense (DoD) and others that allowed the shooter to purchase, own and/or possess the semiautomatic rifle,

ammunition and body armor he used in the shooting spree, and such failures were a proximate cause, in whole or in part, of the injuries to and death of Haley Krueger.

25. Airman Kelley's conviction for assaulting his wife and infant child made it illegal for the shooter to purchase or possess a firearm.

26. As a result of the criminal conviction, the Defendant USA was required to, amongst other things, enter this information into various federal computer databases advising that Airman Kelley had been convicted of crimes that prevented him from purchasing, owning and/or possessing firearms.

27. The shooter was able to purchase an assault-style rifle as a direct result of the US Air Force's admitted, systemic, long-standing, and ongoing failure to comply with the law and its own internal policies, rules, regulations and guidelines promulgated to protect the general populace. The shooter then used that weapon on November 5, 2017 to massacre twenty-six (26) people and wound twenty (20) more.

28. Legal obligations were long ago imposed on the US Military through the Department of Defense ("DoD") that must necessarily be complied with to prevent tragedies, but the US Air Force failed to meet such obligations.

29. The United States of America is liable for the negligent failures, acts and omissions of the Department of Defense, the US Air Force, and respective its employees and members of the Armed Forces.

30. Haley Krueger died, and Plaintiffs have suffered and will suffer injuries and damages as a direct and proximate result of the negligence and gross negligence of Defendant USA that allowed the Sutherland Springs shooting.

## VII. CAUSES OF ACTION

### A.   <u>The Negligence of the United States of America</u>

31.   Pleading further, but not by way of limitation, and adopting paragraphs 1-30 above as though fully set forth verbatim, The United States of America, including but not limited to the Department of Defense and the Department of the Air Force's negligent, willful and systematic failure to report Airman Kelley's criminal convictions into the federal data base was the proximate cause of Haley Krueger's death.  Defendant USA had a duty to report Airman Kelley's criminal arrest and convictions into the federal databases and notify the proper law enforcement agencies as required by law. Proper fulfillment of that duty would have prevented Airman Kelley from purchasing the firearms that were used to take Haley Kruger's young life and the lives of the other members of the Sutherland Springs Church.

32.   Defendant USA breached its duty in failing to report Airman Kelley's criminal arrest and convictions and mental health issues into federal databases and by not notifying the proper law enforcement agencies as required by law.  Defendant USA's failure to meet its duty allowed the shooter to purchase the firearms that were used to take Haley Kruger's young life and the lives of the other members of the Sutherland Springs Church.

33.   Defendant USA's act and/or omissions was the proximate cause of Plaintiff's damages.

### B.   <u>The US Air Force has a General Duty to Report Domestic Violence, Mentally Ill and Felony Convictions</u>

34.   Pleading further, but not by way of limitation, and adopting paragraphs 1-33 above as though fully set forth verbatim, the Department of Defense, for the various branches of the military, also adopted procedures, policies, requirements and regulations to prevent military personnel with known violent propensities, mental illness and/or felony convictions from owning, possessing or purchasing firearms.   More specifically, the Department of the Air Force, adopted these

procedures, policies, requirements and regulations and implemented its own procedures, policies, requirements and regulations to prevent personnel with known violent propensities, mental illness and/or felony convictions from owning, possessing or purchasing firearms.  The negligent and willful and wanton disregard for their own procedures, policies, requirements and regulations resulted in the death of Haley Krueger and others at the Sutherland Springs Church on November 5, 2017.

35.     Significantly, the Department of Defense promulgated regulations that impose upon the various branches of the military, specifically including the US Air Force, certain reporting requirements when a serviceman is convicted of a crime. See DEP'T OF DEF., INSTRUCTION 5505.11: FINGERPRINT CARD AND FINAL DISPOSITION REPORT SUBMISSION REQUIREMENTS 7, available at http://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/550511p.pdf (last updated Mar. 30, 2017) (also referred to as "DoDI 5505.11"), and subsequent revisions/changes.

36.     Promulgation of these regulations by the Department of Defense establishes a duty in the US Air Force, specifically to comply with DoDI 5505.11 in a non-negligent way. These policies and regulations require the submission of fingerprints and final disposition reports to the FBI, such that prior service members with qualifying criminal records are documented in the appropriate database, and thus prevented from buying weapons at the point of sale.

37.     The Department of Defense was aware as far back as 1997, and more explicitly by 2015, that the United States Air Force routinely failed to report such required criminal arrest and conviction information.

38.     As a result of the 2015 internal review conducted by the Inspector General of the Department of Defense which uncovered these repeated failures, the US Air Force agreed to take

"prompt action to ensure" that convicted offenders are properly reported to the appropriate federal database to prevent them from legally purchasing, owning, and/or possessing firearms. Despite this notice and call to action, the Department of Defense, specifically including, but not limited to, the United States Air Force, utterly failed in its reporting obligations and proximately caused the death of Haley Krueger.

39.      It is undisputed that Airman Kelley was a member of the US Air Force, having been on active duty from 2009 until 2014 and stationed at Holloman Air Force Base located in Otero County, New Mexico.

### C.      The US Air Force had a Duty to Report, and the DoD to Oversee the Reporting of Airman Kelley Based on Specific Knowledge

40.      Pleading further, but not by way of limitation, and adopting paragraphs 1-39 above as though fully set forth verbatim, due to the foregoing, and most notably Airman Kelley's assault convictions, domestic abuse conviction, and involuntary commitment to a mental facility, the US Air Force, specifically including, but not limited to, the Office of Special Investigations at Holloman Air Force Base ("AFOSI"), and/or the HQ Air Force Security Forces ("HAF/A4S"), breached their duty to submit Kelley's criminal conviction information, specifically his fingerprints and final disposition report, for inclusion in certain computerized databases, specifically including the FBI's Criminal Justice Information Systems ("CJIS").

41.      Due to the foregoing, and most notably the shooter's assault convictions, domestic abuse conviction, and involuntary commitment to a mental facility, the US DoD, specifically including, but not limited to, the Office of the Inspector General, breached their duty to ensure compliance with DoDI 5505.11 by the United States Military, including but not limited to the US Air Force, having been aware of the systemic and ongoing failure to submit fingerprint and final disposition records to the FBI's Criminal Justice Information System ("CJIS"). See Evaluation of Department

of Defense Compliance with Criminal History Data Reporting Requirements, Report Number DODIG-2015-081, dated February 12, 2015 (the "2015 IG's Report"). The specific failure in this instance involved the DoD's failure to verify that Kelley's criminal conviction information, fingerprints and final disposition report had been properly reported by the US Air Force for inclusion in certain computerized databases, including the FBI's CJIS.

**D.    The US DoD and US Air Force's Failure to Submit Airman Kelley's Records to the FBI Breaches the Duty Imposed by DoDI 5505.11**

42.    Pleading further, but not by way of limitation, and adopting paragraphs 1-41 above as though fully set forth verbatim The CJIS comprises various computer databases, specifically including the National Crime Information Center ("NCIC") database, Uniform Crime Reporting, Fingerprint Identification, the Integrated Automated Fingerprint Identification System (IAFIS) Program, and, most critically, the National Instant Criminal Background Check System ("NICS") which includes both fingerprint and final criminal disposition data.

43.    These are computerized databases accessible by an authorized entity making an inquiry into an individual's background that facilitate prompt disclosure of information in the system from criminal justice agency records regarding crimes and criminals.

44.    Specifically, the NICS database is accessed for a number of purposes and is one of the databases that must be accessed whenever a person seeks to legally purchase certain firearms. Certain criminal proceedings, specifically including felony convictions, detention in a criminal mental health facility, and convictions for domestic abuse, all of which apply to Airman Kelley, are required by DoDI 5505.11 to be entered into the NCIC and other CJIS-related databases.

45.    Had Airman Kelley's criminal arrest and conviction been entered as required through DoD and US Air Force policies, procedures, regulations and/or guidelines and pursuant to the duty established thereby, the shooter would have been prevented and prohibited from purchasing,

owning and/or possessing firearms and body armor, specifically including the firearms and body armor that he used in the Sutherland Springs shooting.

E.    **The US Air Force and Department of Defense Knew of the
      Negligent and Inadequate Reporting and Failed to Remediate**

46.    Pleading further, but not by way of limitation, and adopting paragraphs 1-45 above as though fully set forth verbatim, it is undisputed and has been readily admitted by the US Air Force in the days following the horrific Sutherland Springs shooting tragedy that Airman Kelley's convictions and criminal history were required to be entered into the NCIC database and/or CJIS system, but for reasons not presently known the US Air Force utterly failed in its reporting obligations.  See Statement of Glenn Fine Before the Senate Judiciary Committee, at p. 9.

47.    It is also undisputed that had the information been entered into these databases by the US Air Force at the time of his convictions in and around November 2012 as required by law, Airman Kelley would have been prevented, prohibited and barred from purchasing, owning and/or possessing the firearms and body armor used in this massacre and this tragedy would not have occurred. Id.

48.    The failures of the Department of Defense and the US Air Force are not limited to the failure to timely and accurately enter and/or report Airman Kelley's criminal conviction information into the appropriate computer database in November of 2012.

       In February 2015, the Inspector General for the U.S. Department of Defense conducted a comprehensive review of the failures of the branches of the US military to promptly and accurately input criminal conviction information into the appropriate computer databases, including the FBI's CJIS and specifically the NICS database.  See DoD IG's 2015 Report.

49.    The 2015 IG's Report examined the continuing failures of conviction reporting by the US Navy, US Air Force and US Marines.  The Inspector General recognized that, as far back as 1997,

the branches of the US military had not consistently submitted the required criminal arrest and conviction information to appropriate federal law enforcement agencies, including criminal information databases. See IG's 2015 Report, at p. 13.

50.     With respect to the US Air Force, the 2015 study took a sample of convicted individuals from June 2010 through and including October 31, 2012 (as mentioned above, Airman Kelley was convicted in November 2012, just days after the sample period).   During this time frame, the Inspector General found that there were 358 criminal convictions of US Air Force personnel that mandated reporting obligations. Id., at p. 16.

51.     However, only 248 fingerprint cards were entered into the appropriate database, representing a failure rate of approximately 31%.   With respect to final criminal disposition information regarding these 358 convictions, only 245 final dispositions were reported, representing a failure rate of approximately 32%. Id., at p. 13, 16.

52.     Critically, the US Air Force Security Forces, responsible for responding to the types of crimes perpetrated by then-Airman Kelley, failed to submit 93 fingerprint and final disposition reports in this time period.  This egregious shortcoming is not overtly stated in the DoD IG's 2015 Report, but is spelled out explicitly in the 2018 Compendium of Outstanding Department of Defense Recommendations. See 2018 Compendium of Outstanding Department of Defense Recommendations, at p. 291, rec. F.1.a.

53.     Due to the alarming failure rates identified in the DoD IG's 2015 Report (more than 3 out of 10 failures by the US Air Force to report required criminal arrest and conviction information), the Inspector General made certain recommendations to the branches of the US military, specifically including the US Air Force. Id., at p. 17.

54.     The first recommendation was for the US Air Force to submit and enter the missing

fingerprint and final criminal disposition information for the sample period into the appropriate computer databases. Id., at p. 10.

55.     The Inspector General also recommended that due to the high failure rate the US Air Force "take prompt action" to ensure that all past arrestee information is properly reported and entered in the various criminal history databases. Id.

56.     Upon review of the 2015 Inspector General's Report, the US Air Force also specifically "agreed" with the Inspector General's recommendations in the 2015 Report. Id.

Notwithstanding that the US Air Force was specifically aware in 2015 (and likely well before) that criminal conviction information was not reported more than 3 out of 10 times on average, and despite acknowledging that it would "promptly ensure" that such systemic failures were corrected, the US Air Force utterly failed the general public, and more specifically Decedent Haley Krueger, by failing to ensure that criminal arrest and conviction information was generally reported, and specifically that Airman Kelley's criminal arrest and convictions were properly reported. Id., at p. 16.

57.     Furthermore, due to a gross failure by US Air Force Security Forces to timely collect the requisite information, the US Air Force is incapable in many instances of redressing this systemic failure, further subjecting the general public to unknown dangers that should have been reported. Id., at p. 24 Specifically, US Air Force Security Forces failed to report the requisite information to the FBI in the sample period in 93 instances. See 2018 Compendium of Outstanding Department of Defense Recommendations, at p. 291, rec. F.1.a.

58.     Despite its specific prior knowledge, the US Air Force utterly, needlessly and carelessly failed in its reporting obligations which allowed this tragedy to occur and Haley Krueger to be killed. See Statement of Glenn Fine Before the Senate Judiciary Committee, at p. 9.

Airman Kelley's conviction occurred in November 2012, a mere one month outside the sample examined by the Inspector General. However, and even more tragically, a subsequent DoD IG investigation indicates that, even once aware of the issue, the US Air Force did not remedy this reporting failure. Id.; see 2017 IG's Report.

**F.      The Department of Defense and US Air Force Exhibited Negligence and Willful Indifference by Failing to Address the Reporting Issues**

59.      Pleading further, but not by way of limitation, and adopting paragraphs 1-58 above as though fully set forth verbatim, The US Air Force, while fully aware of the extensive deficiency in reporting and compliance with DoDI 5505.11 since the 2015 DoD Inspector General's Report, failed to investigate the causality of this failure until after the tragic shooting in Sutherland Springs, underlining the gross lack of regard given to the safety of the general public during the time period between the publication of reports.  See Evaluation of Department of Defense Compliance with Criminal History Data Reporting Requirements, Report Number DODIG-2018-035, dated December 4, 2017 (the "2017 IG's Report") at pg. 40 (announcing the commencement of a "related evaluation" designed to "assess the causes for the enduring deficiencies found in this review."); see also See 2018 Compendium of Outstanding Department of Defense Recommendations, at p. 290-92 (detailing the non-complied with recommendations made to address the shortcomings identified in the DoD IG's 1997, 2015 and 2017 Reports).

60.      The US Air Force's Security Forces, responsible for investigating and subsequently reporting on assault and other charges similar to those applicable to Airman Kelley, were deficient in performing the legally required fingerprint card and final disposition report submissions in 94% of the cases addressed in the sample taken to generate the DoD IG's 2017 Report and finding on this compliance issue. This is a greater failure rate than before the remedial recommendations were made through the 2015 DoD IG Report and agreed to by the Secretary of the Air Force. See 2017

IG's Report, at p. 29.

61.     The US Air Force, fully aware of the deficiency in reporting in the Security Forces, failed

to address the conflict between AFI 31-120, which establishes protocol for reporting qualifying

offenses to the FBI, and DoD 5505.11, which had been noted to exist since the publication of the

The US Air Force, despite its specific prior knowledge of the widespread reporting deficiency,

only made criminal data indexing a permanent priority after the horror and tragedy of Sutherland

Springs. See 2017 IG's Report, at p. 28 ("in October 2017 the AFOSI began inspecting AFOSI

criminal indexing data as a special interest item during region unit effectiveness inspections. The

AFOSI IG will work with functional managers to establish a permanent inspection checklist related

to this area.") (emphasis added).

62.     Had the US Air Force complied with the DoD IG's recommendations, the shooter would

not have been able to purchase, own and/or possess the automatic rifle and body armor that he

used to attack and slaughter Haley Krueger and twenty five (25) people and injure twenty (20)

more.   See 2017's Report. at p. 40 (implying that the shooting in Sutherland Springs was

precipitated by the US Air Force's failure to submit fingerprint cards and final disposition reports

to the FBI as mandated by DoDI 5505.11); see also: Statement of Glenn Fine Before the Senate

Judiciary Committee, at p. 9 (acknowledging the same).

**G.      The Department of Defense and US Air Force's Failures Prevented Law Enforcement from Interdicting the shooter on Multiple Occasions**

63.     Pleading further, but not by way of limitation, and adopting paragraphs 1-62 above as

though fully set forth verbatim Plaintiffs' allegations of negligence are not limited to the fact that

the US Air Force's failures allowed ex-Airman Kelley to purchase, own and/or possess firearms.

The utterly careless and reckless failures of the US Air Force in satisfying its reporting obligations

with respect to Airman Kelley's criminal arrest and convictions resulted in numerous missed

opportunities for various local law enforcement agencies to prevent further violence.

64.     Upon information and belief, after Airman Kelley's Bad Conduct Discharge from the Air Force, local law enforcement personnel made more than 17 visits to the shooter's home on allegations ranging from animal cruelty to domestic violence and sexual assault.  Any of these incidents, had law enforcement known of the shooter's past crimes and mental health issues, could have led to the shooter's arrest and potentially averted the tragic death of Haley Krueger and twenty-five (25) other people, and the injury of twenty (20) more.

65.     One instance, on or about June 7, 2013, Comal County, Texas deputies responded to the shooter's home to investigate a report of "rape by force" allegedly perpetrated by the shooter. Without information about the shooter's prior convictions, deputies investigated the report for months, but no charges were brought once investigators believed Devin P. Kelley moved to Colorado.  Had the information regarding the shooter's criminal arrest and conviction for domestic violence been entered, as was required, Comal County law enforcement would have been aware of that information and perhaps been able to bring felony charges under the Texas Penal Code against Devin P. Kelley in 2013.

66.     Additionally, in early 2014, local police in Texas responded to the shooter's home to investigate reports of domestic abuse of his then girlfriend, Danielle Shields, but charges were not pursued after Shields told responding officers the report was the result of a misunderstanding.  Had the US Air Force reported Airman Kelley's criminal arrest and convictions for domestic violence, local law enforcement would have had reason to further investigate any claim of misunderstanding and perhaps pursued felony charges under the Texas Penal Code against Airman Kelley in 2014. Had law enforcement known that Kelley was convicted of a prior domestic assault, they may have properly entered the home and seized any weapons that were visible or pursued felony charges

under the Texas Penal Code against the shooter at that time.

67.     Again, in August 2014, Colorado law enforcement responded to the shooter's home to investigate claims of animal cruelty allegedly perpetrated by the shooter, resulting in a standoff with police once the shooter refused to come out of the home.  Without information about the shooter's prior convictions, law enforcement issued Devin P. Kelley a citation rather than arresting him.  Had Colorado local law enforcement had information regarding Airman Kelley's violent criminal past, perhaps he would have been arrested and incarcerated in August of 2014.

68.     As with his military convictions, any conviction for domestic violence after being discharged from the military would have likewise barred, prohibited and/or prevented Devin P. Kelley from purchasing, owning and/or possessing firearms, ammunition and body armor, including the semiautomatic rifle and body armor used in the massacre.

69.     Had the information regarding Airman Kelley's criminal arrest and conviction been entered, as was required, local law enforcement would have been aware of that information when they conducted various welfare checks at the shooter's home in Texas in the months leading up to the shooting.

   H.     **Negligent Supervision and Training**

70.     Pleading further, but not by way of limitation, and adopting paragraphs 1-69 above as though fully set forth verbatim. Defendant USA committed acts and omissions which constitute negligence in the supervision and training.  Defendant USA failed to properly supervise its employees to ensure that the regulations, policies, procedures, and/or guidelines were being followed and, more specifically, in failing to report Airman Kelley's criminal arrest and convictions were reported to the appropriate federal law enforcement agencies and databases as required by law, thereby allowing Airman Kelley to purchase the semiautomatic rifle and body

armor used in the Sutherland Springs Church shooting.

71.     Defendant USA failed to properly train its employees to ensure that the regulations, policies, procedures, and/or guidelines were being followed and, more specifically, in failing to report Airman Kelley's criminal arrest and convictions were reported to the appropriate federal law enforcement agencies and databases as required by law, thereby allowing Airman Kelley to purchase the semiautomatic rifle and body armor used in the Sutherland Springs Church shooting.

72.     Had Defendant USA properly supervised and trained its employees and members of the US Airforce staff, Defendant USA employees would have complied with its necessary and mandatory reporting requirements and Airman Kelley would have been barred, prohibited and/or prevented from purchasing, owning and/or possessing firearms and body armor, including the semiautomatic rifle and body armor used in the Sutherland Springs Church shooting.

73.     Furthermore, had the US Air Force properly supervised and trained its employees and members, fully complying with the remedial directives recommended by the IG's 2015 Report and agreed to by the US Air Force, Airman Kelley would have been barred, prohibited and/or prevented from purchasing, owning and/or possessing firearms and body armor, including the semiautomatic rifle and body armor used the Sutherland Springs Shooting.

74.     Based upon the foregoing, the death of Haley Krueger was caused, in whole or in part, by the negligence, recklessness, and/or carelessness of the Defendant USA, through the US Air Force, including, but not limited to the US Air Force failing to correct known deficiencies in its criminal arrest and conviction reporting obligations.

### VIII.  DEFENDANT USA PROXIMATELY CAUSED THE DEATH OF HALEY KRUEGER

75.     Pleading further, but not by way of limitation, and adopting paragraphs 1-74 above as though fully set forth verbatim Based upon the foregoing, the death of Haley Krueger was caused,

in whole or in part, by the negligence, recklessness, and/or carelessness of the Defendant USA, through the US Air Force, including, but not limited to: that the US Air Force failed to adhere to the regulations, policies, procedures, and/or guidelines issued by the Department of Defense in failing to report the shooter's criminal arrest and convictions to appropriate federal law enforcement agencies and databases as required by law, thereby allowing Airman Kelley to purchase the semiautomatic rifle and body armor used in the massacre.

76.     Had the US Air Force complied with its necessary and mandatory reporting requirements, Kelley would have been barred, prohibited and/or prevented from purchasing, owning and/or possessing firearms and body armor, including the semiautomatic rifle and body armor used in the massacre and thus, the shooting would not have taken place.

77.     Furthermore, had the US Air Force followed its own protocol and prioritized civilian safety by fully complying with the remedial directives recommended by the IG's 2015 Report and agreed to by the US Air Force, Kelley would have been barred, prohibited and/or prevented from purchasing, owning and/or possessing firearms and body armor, including the semiautomatic rifle and body armor used in the massacre, and thus the shooting would not have taken place.

78.     The untimely and preventable death of Haley Krueger was caused, in whole or in part, by the negligence, recklessness, and/or carelessness of the Defendant USA, through the US Air Force, including, but not limited to: the failure of the US Air Force to comply with Department of Defense regulations, policies, procedures, and/or guidelines, specifically including, but not limited to, Department of Defense INSTRUCTION, Number 5505.11 and subsequent revisions/changes, thereby allowing the shooter to purchase the firearm and body armor used in the shooting.

79.     The untimely and preventable death of Haley Krueger was caused, in whole or in part, by the negligence, recklessness, and/or carelessness of the Defendant USA, through the US Air Force,

including, but not limited to the US Air Force failing to correct known deficiencies in its criminal arrest and conviction reporting obligations.

80.    The untimely and preventable death of Haley Krueger was caused, in whole or in part, by the negligence, recklessness, and/or carelessness of the Defendant USA, through the US Air Force, including, but not limited to its failure of the US Air Force, despite its public statements to the contrary, to adhere to or heed the recommendations promulgated by the Inspector General of the Department of Defense concerning its systemic failures to properly report arrest and criminal conviction information.

81.    The untimely and preventable death of Haley Krueger was caused, in whole or in part, by the negligence, recklessness, and/or carelessness of the Defendant USA, through the US Air Force, including but not limited to the US Air Force failing to comply with its obligations and duties regarding criminal arrest and conviction reporting.

82.    The untimely and preventable death of Haley Krueger was caused, in whole or in part, by the negligence, recklessness, and/or carelessness of the Defendant USA, through the US Air Force, including but not limited to the US Air Force being specifically aware for years before the shooting that it had consistently failed to report required arrest and criminal conviction information but failing to correct these deficiencies and failing to appropriately abide by and follow its own internal procedures regarding criminal arrest and conviction information.

83.    The untimely and preventable death of Haley Krueger was caused, in whole or in part, by the negligence, recklessness, and/or carelessness of the Defendant USA, through the US Air Force, including but not limited to the US Air Force creating a dangerous condition to the public, and specifically to Decedent Haley Krueger, by its failure to adhere, comply and/or follow required criminal arrest and conviction information reporting obligations.

84.     The untimely and preventable death of Haley Krueger was caused, in whole or in part, by the negligence, recklessness, and/or carelessness of the Defendant USA, through the US Air Force, including but not limited to the US Air Force failing to discuss its deficiencies with other branches of the US military and/or other governmental agencies in an attempt to correct these known deficiencies.

85.     The untimely and preventable death of Haley Krueger was caused, in whole or in part, by the negligence, recklessness, and/or carelessness of the Defendant USA, through the US Air Force, including, but not limited to the US Air Force unleashing on the public a dangerous individual who had an unrestricted ability to purchase firearms and body armor when he should have been wholly prevented from doing so.

86.     The untimely and preventable death of Haley Krueger was caused, in whole or in part, by the negligence, recklessness, and/or carelessness of the Defendant USA, through the US Air Force, all of which, individually and/or jointly, proximately caused, in whole or in part, the subject shooting, the death of Haley Krueger and Plaintiffs' damages set forth herein.

## IX. NO SOVEREIGN IMMUNITY

87.     None of Plaintiffs' claims asserted herein are subject to any of the exceptions to sovereign immunity found in 28 U.S.C. § 2680.

88.     Defendant USA, including the Department of Defense and the US Air Force and its employees and service members, failed to meet the required reporting obligations as described herein.

89.     Defendant USA, including the US Air Force and its employees, failed to exercise due care in the execution of its duties under the required reporting obligations described herein.

90.     The reporting obligations described herein do not involve discretionary functions or duties.

91.   Defendant USA, including the Department of Defense and the US Air Force and its employees and service members, failure to report was negligent.

92.   Defendant USA, including the Department of Defense and the US Air Force and its employees and service members, knowledge of the systematic, constant and on-going practice of not reporting service members with known violent propensities, mental illness and/or criminal convictions was gross negligence.

## X.  DAMAGES

93.   Pleading further, but not by way of limitation, and adopting paragraphs 1-92 above as though fully set forth verbatim Plaintiffs bring this action as the surviving wrongful death beneficiary of Haley Krueger. This action is brought pursuant to Tex. Civ. Prac. & Rem. Code §§ 71.002-.004, commonly referred to as the "Wrongful Death Act," and pursuant to the terms and provisions of Tex. Civ. Prac. & Rem. Code § 71.021, known as the "Survivor's Act," and any and all other applicable laws including the common law of the State of Texas.

94.   No administration of the estate is pending and no administration is necessary.  Further, no administrator has been appointed in this action.

95.   As a direct and proximate result of the negligent conduct and failures of Defendant USA, Haley Krueger died and Plaintiff has suffered damages.

96.   As the surviving parent of Haley Krueger, Deceased, Plaintiff is a statutory beneficiary of Decedent.

97.   By reason of the shooting and the death of Haley Krueger, Plaintiff has suffered past and future pecuniary loss, meaning the loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, that Plaintiff, in reasonable probability, would

have received from Haley Krueger had she lived.

98.     By reason of the shooting and the death of Haley Krueger, Plaintiff has suffered past and future loss of companionship and society, meaning the loss of the positive benefits flowing from the love, comfort, companionship, and society that Plaintiff, in reasonable probability, would have received from Haley Krueger had she lived.

99.     By reason of the shooting and the death of Haley Krueger, Plaintiff has suffered past and future mental anguish, meaning the emotional pain, torment, and suffering experienced by Plaintiff because of the death of Haley Krueger, Deceased.

100.    The Estate of Haley Krueger, Deceased, is also entitled to bring action on behalf of Decedent for the physical pain and mental anguish she was caused to endure from the time she was shot until the time of her death as a result of the negligence of Defendant.

## XI. PRAYER

WHEREFORE, Plaintiffs pray and respectfully demand verdict and judgment as follows:

a.      That summons and process issue and Defendant United States of America be served with this Complaint as required by law and that Defendant United States of America be required to appear and answer;

b.      That Plaintiffs' claims under the Federal Torts Claims Act against the Defendant United States of America be tried to a judge sitting as the fact finder;

c.      That Plaintiffs be awarded the damages sought herein in an amount determined by the trier of fact;

d.      That Defendant United States of America be charged with all costs and other expenses attributable to this action to the maximum extent permitted by law under the Federal Tort Claims Act; and,

e.      That Plaintiffs be granted such other and further relief as is supported by the evidence and authorized by law that the Court may deem appropriate.

Respectfully submitted,

TYLER & PEERY
5822 IH 10 West
San Antonio, Texas  78201
(210) 340-0900  PHONE
(210) 736-9197  FACSIMILE


_____
DENNIS PEERY
State Bar No. 15728750
Email:  d.peery@tylerpeery.com
R. CRAIG BETTIS
State Bar No. 24040518
Email: craig@tylerpeery.com

ATTORNEYS FOR PLAINTIFFS